UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Teresa R. Doerr,                              No. 13-cv-3108 (MJD/LIB)

        Plaintiff,

  v.                                              **REPORT AND RECOMMENDATION**

Todd G. Hoffman, et al.,

        Defendants.

---

This matter came before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss, [Docket No. 13]. The Honorable Michael J. Davis, Chief United States District Judge for the District of Minnesota, referred the present motion to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. (Order of Referral [Docket No. 20]). The Court held a motion hearing on August 4, 2014, and the Court took Defendants' Motion to Dismiss, [Docket No. 13], under advisement thereafter. For reasons discussed herein, the Court recommends **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss, [Docket No. 13].

I.      **BACKGROUND**

Driver and Vehicle Services (DVS), a division of the Minnesota Department of Public Safety, maintains the state's motor vehicle records containing "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725. (Compl. [Docket No. 1], ¶¶ 9-10). The Drivers Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721 *et seq.*, protects access to and disclosure of motor vehicle records. (Id. ¶ 11).

On November 13, 2013, Plaintiff Teresa R. Doerr ("Plaintiff") filed the present DPPA action against Defendants Todd G. Hoffman, Lee R. Kelly, Wright County, and various unidentified, individual Doe Defendants.[1] (Compl. [Docket No. 1]). Plaintiff alleges one count of violation of Section 2724(a) of the DPPA against Defendants Hoffman and the Doe Defendants in their individual and official capacities and against Wright County "directly and vicariously"; one count of common law invasion of privacy against Defendants Hoffman and the Doe Defendants in their individual and official capacities and against Wright County "directly and vicariously"; and one count of violation of the Minnesota Government Data Practices Act (MGDPA) against Defendant Kelly in his official capacity as Wright County Coordinator as the statutorily designated "Responsible Authority" and Wright County. (Id. at Counts I-III).

Plaintiff is a longtime employee of the Wright County Sheriff's Office. (Id. ¶ 12). Defendant Hoffman, a Wright County deputy, is Plaintiff's supervisor. (Id.) Plaintiff alleges that on May 9 and 10, 2012, Plaintiff called in sick to work because she had injured her back. (Id.) On May 10, 2012, Plaintiff's husband allegedly witnessed Defendant Hoffman leaving Plaintiff's driveway, a dead-end road. (Id.) Plaintiff alleges that later that day neighbors asked her about a "suspicious vehicle" that had been parked on the dead-end road earlier that day. (Id. ¶ 13). "The neighbors' description of the vehicle and the person in the vehicle led Plaintiff to conclude that Defendant Hoffman was the person who had been parked on the road looking at her house on May 10, 2012." (Id.) Because Plaintiff confirmed with Sheriff Joe Hagerty that Defendant Hoffman had no professional or work-related reason for being at Plaintiff's house on May 10, 2012, Plaintiff alleges that, on information and belief and without mention of any additional facts, Defendant Hoffman had been outside Plaintiff's home for the purpose of stalking her. (Id.

---

[1] "Defendants John Doe 1-John Doe 10, on information and belief, are individuals employed by Wright County who have accessed Plaintiff's Driver and Vehicle Services records, and who cannot be identified without further investigation and discovery." (Compl. [Docket No. 1], ¶ 7).

¶¶ 14, 15). Plaintiff filed an internal complaint with Wright County regarding Defendant Hoffman's conduct on May 10, 2012; however, Plaintiff pleads no facts regarding the specifics of the internal investigation or the results of the investigation. (Id. ¶ 16).

A subsequent audit of access to Plaintiff's DVS records revealed that between February 4, 2003 and December 29, 2012, the Wright County Sheriff's Office accessed Plaintiff's motor vehicle records on 76 separate occasions, including access on May 10, 2012. (Id. ¶¶ 18-19; Ex. A). "On information and belief, Plaintiff believes that defendant Hoffman accessed her motor vehicle records on May 10, 2012, to facilitate his stalking of Plaintiff which is not a permissible purpose under the DPPA." (Id. ¶ 20). Additionally, Plaintiff conclusorily alleges that "[o]n information and belief, Plaintiff believes that Defendant Hoffman and the John Doe Defendants have accessed her motor vehicle records at various times since February 4, 2003, for purposes not permissible under the DPPA." (Id. ¶ 21).

Plaintiff seeks relief in the form of a monetary judgment for actual and liquidated damages, punitive damages, costs and fees, and equitable relief in the form of an order enjoining Defendants from unlawfully accessing Plaintiff's motor vehicle records and compelling Defendants to comply with the MGDPA and the DPPA.

## II.     DEFENDANTS' MOTION TO DISMISS, [DOCKET NO. 13]

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants Todd G. Hoffman, Lee R. Kelly, and Wright County (collectively, "Defendants") move the Court for an order dismissing Plaintiff's Complaint in its entirety (1) for failure to state a claim upon which relief may be granted; (2) as barred by applicable statutes of limitations; and/or (3) because Defendants are entitled to qualified immunity.

A.      Standard of Review

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). When reviewing motions for judgment on the pleadings, courts "accept as true all facts [pled] by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Faibisch v. Univ. of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)); see also Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. Faibisch, 304 F.3d at 803 (citing Any & All Radio, 207 F.3d at 462). "A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint." Kampschroer v. Anoka Cnty., No. 13-cv-2512 (SRN/TNL), 2014 WL 3013101, at *5 (D. Minn. July 3, 2014) (citing Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint articulate only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In addressing a motion to dismiss for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

4

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts must undertake the "context-specific task" of determining whether the moving party's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See id. at 679-81. The moving party must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

**B.     Count I: Violation of the DPPA**

**1.     The DPPA Generally**

"The DPPA is a federal statute restricting the use and distribution of personal information contained in motor-vehicle records." Shambour v. Carver Cnty., No. 14-cv-566 (RHK/LIB),

2014 WL 3908334, at *2 (D. Minn. Aug. 11, 2014). The DPPA, 18 U.S.C. §§ 2721 *et seq*., "regulat[es] the disclosure of personal information contained in records accessible through state departments of motor vehicles ("DMVs")." Mallak v. Aitkin Cnty., No. 13-cv-2119 (DWF/LIB), 2014 WL 1285807, at *3 (D. Minn. Mar. 31, 2014) (citing Maracich v. Spears, — U.S. —, 133 S. Ct. 2191, 2195, 186 L.Ed.2d 275 (2013)). The DPPA provides, "A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity . . . personal information . . . about any individual obtained by the department in connection with a motor vehicle record," save as provided by 18 U.S.C. § 2721(b). 18 U.S.C. § 2721(a). The exception provision, 18 U.S.C. § 2721(b), articulates several permissible uses of personal information for various governmental and public purposes, such as "use by any government agency, including any court or law enforcement agency, in carrying out its functions." 18 U.S.C. § 2721(b)(1); Kampschroer, 2014 WL 3013101, at *5.

## 2.      Statute of Limitations

Although neither the United States Supreme Court nor the Eighth Circuit has specifically addressed this issue, it is increasingly well-settled in this District that claims arising under the DPPA (1) are subject to a four-year statute of limitations, and (2) accrue at the time of the alleged access(es) to motor vehicle records. See Kampschroer, 2014 WL 3013101, at *5-*6 ("This District, however, has found repeatedly that the standard rule for accrual applies, such that a DPPA cause of action accrues at the time the improper access of information occurs.").

In Kost v. Hunt, 983 F. Supp. 2d 1121 (D. Minn. 2013), the Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, held that claims alleged pursuant to the DPPA are subject to a four-year statute of limitations:

6

> The DPPA does not include a statute of limitations provision. It is, however, subject to the general statute of limitations provided for by 28 U.S.C. § 1658(a), which states that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." That section was enacted on December 1, 1990. Because the DPPA was enacted in 1994, the limitation of 28 U.S.C. § 1658(a) applies. See Smythe v. City of Onamia, Civ. No. 12-3149, 2013 WL 2443849, at *6 n. 3, 2013 U.S. Dist. LEXIS 78948, at *15-16 n. 3 (D. Minn. June 5, 2013) (noting that the default four-year limit applies to the DPPA).

Kost, 983 F. Supp. 2d at 1126. The Kost decision also analyzed the issue of "accrual" and any potential application of a discovery rule, and it expressly rejected application of a discovery rule to DPPA claims: "Accrual at the time the plaintiff has a complete and present cause of action must therefore be treated as the standard in evaluating the statute of limitations for DPPA claims." Id. at 1128. In other words, a DPPA claim accrues at the time of the alleged look-up. This holding has been confirmed time and again in this District. See, e.g., Rasmusson v. Chisago Cnty., 991 F. Supp. 2d 1065, 1079-82 (D. Minn. 2014) (applying the standard rule and finding that a DPPA cause of action accrues at the time the improper access of information occurs); Potocnik v. Anoka Cnty., No. 13-cv-1103 (DSD/TNL), 2014 WL 683980, at *2 (D. Minn. Feb. 21, 2014) ("Although the Eighth Circuit is silent on when a DPPA cause of action accrues, courts in this district hold that the general accrual rule applies to the DPPA."); Bass v. Anoka Cnty., No. 13-cv-860 (DSD/JJG), 2014 WL 683969, at *2 (D. Minn. Feb. 21, 2014); Smythe v. City of Onamia, No. 12-cv-03149 (ADM/LIB), 2013 WL 2443849, at n.3 (D. Minn. June 5, 2013) (applying the standard four-year statute of limitations).

The undersigned finds that recent decisions in this District have come to this determination after a thorough analysis of relevant statutory language, case law, and legislative history, and, as a result, the Court agrees with and relies on the above-described findings and

conclusions regarding the applicable statute of limitations for claims arising under the DPPA. See also Mallak, 2014 WL 1285807, at *5. Accordingly, because decisions in this District have consistently rejected application of the "discovery rule" of accrual to DPPA claims, and because it has become increasingly well-settled in this District that DPPA claims are subject to a four-year statute of limitations for which a cause of action accrues at the time of the improper access of information, **the Court recommends dismissing with prejudice all DPPA claims arising from accesses alleged to have occurred before November 13, 2009**.

### 3.    Remaining DPPA Claims

As articulated above, Plaintiff alleges one count of violation of Section 2724(a) of the DPPA against Defendant Hoffman and the Doe Defendants in their individual and official capacities and against Wright County "directly and vicariously." "To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted." Mallak, 2014 WL 1285807, at *6 (citing 18 U.S.C. § 2724(a); Taylor v. Acxiom Corp., 612 F.3d 325, 335 (5th Cir. 2010)). The plaintiff bears the burden of alleging facts sufficient to establish each of these three elements. Mallak, 2014 WL 1285807, at *6 (citations omitted). "Thus, whether Defendants' accesses of Plaintiff's driver's license record in this case supports a valid DPPA claim depends on the specific allegations in the Complaint and whether the information was obtained for a permitted purpose." Id. at *8.

As an initial matter, Plaintiff does not explicitly allege that Wright County *itself*, by any specific actions, violated the DPPA. Rather, Plaintiff only alleges Count I against Wright County "directly and vicariously," without further explanation or description. (Compl. [Docket No. 1], at Count I). This District has previously dismissed entity defendants, like Wright County, when a

plaintiff fails to specifically allege and implicate the county's direct participation in any alleged DPPA violation:

> Providing access to motor-vehicle records for law-enforcement purposes, however, is expressly allowed by the DPPA. [18 U.S.C.] § 2721(b)(1). And Shambour has not alleged any facts indicating law-enforcement officers were given access [by the entity defendants] to DVS records for any other reason. In the absence of any factual allegations to the contrary, the only reasonable inference to be drawn is that these [entity] Defendants provided law-enforcement officers with access to the DVS database for the purpose of carrying out their jobs, which is permitted under the DPPA.

Shambour, 2014 WL 3908334, at *3. In Shambour, this District explicitly dismissed the plaintiff's DPPA claims against entity defendants save to the extent the named entities represented Doe Defendants against whom Plaintiff alleged individual DPPA violations. In line with Shambour, **the Court recommends dismissing Plaintiff's DPPA claims as alleged against Wright County as a separate entity**.

The Court next turns its attention to Plaintiff's remaining DPPA claims as alleged against Defendant Hoffman and the Doe Defendants in their individual and official capacities. Recently, this District has held that a chart listing all alleged look-ups of a plaintiff's motor vehicle information, complete with information showing the location of each look-up and the exact date and time of each look-up, sufficiently alleges that accused defendants knowingly obtained the plaintiff's motor vehicle information. Mallak, 2014 WL 1285807, at *8. "[T]his Court has previously held that 'information may be "obtained" simply through viewing' it." Shambour, 2014 WL 3908334 (quoting Nelson v. Jesson, No. 13-cv-340 (RHK/JJK), 2013 WL 5888235, at *8 (D. Minn. Nov. 1, 2013); see also Smythe, 2013 WL 2443849, at *6 ("[S]imply retrieving records without a permitted purpose is a violation" of the DPPA.)). Accordingly, by Exhibit A to Plaintiff's Complaint – namely, a chart identifying each of the alleged look-ups – Plaintiff has

sufficiently alleged that Defendant Hoffman and/or the Wright County Doe Defendants knowingly obtained the personal information contained in Plaintiff's motor vehicle records. (Compl. [Docket No. 1], Ex. A). Thus, the Court now needs to determine whether Plaintiff has alleged facts sufficient to plead the third and final element of a DPPA claim, namely, that the alleged look-ups were performed for an impermissible purpose.

Decisions from this District have evaluated plaintiffs' "impermissible purpose" pleadings on a case-by-case basis, evaluating a plaintiff's factual pleadings as a whole when determining whether he or she has alleged sufficient facts to support this third element of a DPPA claim. "Facts evidencing impropriety as to each individual access must be alleged separately to rise above the level of speculation." Traub v. City of Saint Paul, No. 13-cv-3017 (MJD/JJK), 2014 WL 2881484, at *4 (D. Minn. June 25, 2014).

With the exception of the May 10, 2012, look-up, Plaintiff has not alleged any particularized facts sufficient to establish – or even suggest – an improper purpose for the alleged accesses of her motor vehicle records. By the Complaint's own allegations, Plaintiff attributes the specific "impermissible purpose" of Defendant Hoffman's alleged stalking only to the May 10, 2012, look-up. With respect to all other accesses, Plaintiff pleads no circumstantial facts, much less specific facts, that would even tend to suggest that the other accesses may have been for an impermissible purpose. Most compellingly, not only is Plaintiff's "impermissible purpose" allegation entirely generic and conclusory, but, as in Kost, Plaintiff's information was accessed by her driver's license number, which "reasonably implicates a number of legitimate law enforcement concerns." Kost, 983 F. Supp. 2d 1121; Mallak, 2014 WL 1285807, at *9.

The Court compares the facts alleged in Mallak to those alleged in the case at hand. In Mallak, this District held that the plaintiff's allegations – including allegations that the subject

look-ups were performed by name not license plate number, that she had not committed any crimes that may have otherwise potentially justified the look-ups, and that plaintiff was a well-known attorney in her area with strong ties to the community – when considered as a whole, were sufficiently specific to allege a plausible claim that plaintiff's records were not accessed for a permitted purpose. Id. The Mallak court found it particularly compelling that the alleged look-ups accessed plaintiff's information by her name, as "a search by driver's license number (as opposed to a search by name) reasonably implicates a number of legitimate law enforcement concerns." Id. The Mallak court found plaintiff's allegations, when considered as a whole, sufficiently plausible to survive a Rule 12(b)(6) motion to dismiss. Id.; see also Heglund v. Aitkin Cnty., No. 14-cv-296 (ADM/LIB), 2014 WL 4414821, at *5 (D. Minn. Sept. 5, 2014).

Unlike in Mallak, Plaintiff in the case at bar fails to allege a sufficiently specific set of circumstances that tends to implicate an impermissible purpose for all accesses save the May 10, 2012, access. Accordingly, **the Court recommends dismissing, without prejudice, all of Plaintiff's remaining DPPA claims except for the May 10, 2012, access**.

In contrast, although Plaintiff does not allege that her accesses were performed by name, or that she has not committed any crimes that may have otherwise potentially justified the alleged accesses, Plaintiff has alleged sufficiently specific facts that, when considered together, create a plausible claim that Defendant Hoffman's May 10, 2012, access of Plaintiff's DVS information was without a permissible purpose. Plaintiff specifically alleges that in addition to his lookup of Plaintiff's DVS information on May 10, 2012, Defendant Hoffman is her supervisor and is accordingly well-acquainted with Plaintiff, that specific information from her husband and her neighbors led Plaintiff to believe that Defendant Hoffman had been outside of Plaintiff's home on May 10, 2012, and that Defendant Hoffman did not have a professional or

work-related reason for being there. Although these factual allegations are not sufficient to implicate an impermissible purpose for <u>all</u> alleged look-ups as in <u>Mallak</u>, Plaintiff has sufficiently alleged here specific facts in support of a DPPA claim arising from the May 10, 2012, access.

Finally, Defendant Hoffman is not entitled to qualified immunity. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999). The contours of the right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).

Decisions from this District have previously held that individual governmental defendants are not entitled to qualified immunity for claims arising under the DPPA:

> Here, at this stage of the proceedings, plaintiff has adequately alleged the violation of a clearly established statutory right. The DPPA is clear that accessing driver's license information without a permissible purpose violates the law. The DPPA has been in place since 1994. By August 2009, Defendants would have been on notice of the DPPA and its prohibition of the access of driver's license information for impermissible purposes.

<u>Mallak</u>, 2014 WL 1285807, at *13. In accordance with the existing case law of this district, the Court finds that Defendant Hoffman is not entitled to qualified immunity from Plaintiff's sole surviving DPPA claim.

For the foregoing reasons, **the Court recommends dismissing all of Plaintiff's DPPA claims except for that arising from Defendant Hoffman's alleged May 10, 2012, access**.

### C.     Count II: Common Law Invasion of Privacy

In addition to her DPPA claims, Plaintiff alleges one count of common law invasion of privacy against Defendant Hoffman and the Doe Defendants in their individual and official capacities and against Wright County "directly and vicariously."

#### 1.     Statute of Limitations

As a threshold matter, common law invasion of privacy claims are subject to a two-year statute of limitations. Bass v. Anoka Cnty., 998 F. Supp. 2d 813, n. 9 (D. Minn. 2014) (citing Hough v. Shakopee Pub. Schs., 608 F. Supp. 2d 1087, 1118 (D. Minn. 2009)). As a result, **the Court recommends dismissing with prejudice Plaintiff's common law invasion of privacy claims arising from accesses and/or events alleged to have occurred before November 13, 2011**.

#### 2.     Remaining Invasion of Privacy Claims

Common law invasion of privacy, or "intrusion upon seclusion," is actionable when "one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998); Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).

> What is "highly offensive" is generally considered a "question of fact" for the jury, and only becomes a question of law "if reasonable persons can draw only one conclusion from the evidence." To determine whether an interference is offensive, courts consider: "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded" and "the number

> and frequency of the intrusive contacts." The interference must be
> a "substantial one, of a kind that would be highly offensive to the
> ordinary reasonable person, as the result of conduct to which the
> reasonable person would strongly object."

Mallak, 2014 WL 1285807, at *13 (internal citations omitted).

To the extent that Plaintiff's invasion of privacy claim is based on any of the alleged DVS look-ups, it fails as a matter of law. "The Eighth Circuit has held that obtaining a social-security number is not a tortious intrusion upon seclusion. And as for the remaining information in the DVS database, the Court agrees with other courts in this district that the act of obtaining or disclosing such information would not be highly offensive to an ordinary reasonable person." Potocnik v. Carlson, No. 13-cv-2093 (PJS/JJG), 2014 WL 1206403, at *17 (D. Minn. Mar. 24, 2014) (internal citations omitted); see also Nelson, 2013 WL 5888235, at *8 (noting that much of the information contained in motor vehicle records is publicly available and that most people readily produce their driver's licenses to confirm their age or identity). "No reasonable person could find that the alleged access of a home address, photographs, dates of birth, eye color, heights, weights, and driver identification numbers meets the 'highly offensive' threshold. This information is not particularly sensitive in nature, and individuals routinely turn over such information when they show their driver's license." Kampschroer, 2014 WL 3013101, at *13. Because this district has held that a plaintiff's motor vehicle information is not private and that access to such information cannot constitute "highly offensive" behavior, Plaintiff necessarily fails to state a common law invasion of privacy claim upon which relief may be granted, and **the Court recommends dismissing with prejudice Count II, to the extent it is based on the alleged DVS look-ups.**

To the extent that Plaintiff's invasion of privacy claim is based on Defendant Hoffman's alleged "stalking," this claim, too, fails as a matter of law. Defendant Hoffman's actions in

parking on a public thoroughfare near Plaintiff's home and turning around in Plaintiff's drive, without more (i.e., peering in windows, entering the home, etc.), are insufficient to constitute invasion of privacy. See, e.g., Boring v. Google Inc., 362 F. App'x 273, 279 (3d Cir. 2010) ("No person of ordinary sensibilities would be shamed, humiliated, or have suffered mentally as a result of a vehicle entering into his or her ungated driveway . . . ."). Entering Plaintiff's driveway, alone, cannot be considered "highly offensive" as a matter of law. See, e.g., Radford v. Miller, 2012 WL 1380262, at *3 (Minn. Ct. App. Apr. 23, 2012) ("[T]here is no liability for knocking at the plaintiff's door, or calling . . . on one occasion or even two or three . . . .") (citing Restatement (Second) of Torts § 652B, cmt. d). Because Defendant Hoffman's presence on May 10, 2012, outside Plaintiff's home, in his own vehicle, does not constitute "highly offensive" behavior as a matter of law, Plaintiff necessarily fails to state a common law invasion of privacy claim upon which relief may be granted, and **the Court recommends dismissing with prejudice Count II, to the extent it is based on Defendant Hoffman's alleged "stalking" behavior**.

### D.      Count III: Violation of the MGDPA

Finally, Plaintiff alleges one count of violation of the Minnesota Government Data Practices Act (MGDPA) against Defendant Kelly in his official capacity as Wright County Coordinator as the statutorily designated "Responsible Authority" and Wright County.

#### 1.      Statute of Limitations

As an initial matter, a six-year statute of limitations applies to claims brought pursuant to the MGDPA. Manteuffel v. City of North St. Paul, 570 N.W.2d 807 (Minn. Ct. App. 1997). As a result, **the Court recommends dismissing with prejudice Plaintiff's MGDPA claims arising from accesses and/or events alleged to have occurred before November 13, 2007**.

2.      **Remaining MGDPA Claims**

The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities," including confidential, personal data. Nelson, 2013 WL 5888235, at *7 (citing Minn. Stat. § 13.01, subd. 3). The MGDPA creates a private cause of action for damages. Achman v. Chisago Lakes Indep. Sch. Dis. No. 2144, 45 F. Supp. 2d 664, 669 (Minn. Ct. App. 1999). A person who suffers damage as a result of a MGDPA violation may bring an action against a state agency and/or responsible authority to cover "any damages sustained, plus costs and reasonable attorney fees." Minn. Stat. § 13.08, subd. 1; Navarre v. South Washington County Schs., 633 N.W.2d 40, 53 (Minn. Ct. App. 2001).

As a threshold matter, Plaintiff has failed in the present case to identify the appropriate "responsible authority." Plaintiff's Complaint makes clear that the information at issue is the DVS-maintained state motor vehicle records. Plaintiff's Complaint, on its face, involves a *statewide* information system and does not in any way identify any system administered and/or maintained at the county level. Accordingly, the Court looks to Minn. Stat. 13.02, subd. 16(a) when defining the appropriate "responsible authority." "'Responsible authority' in a state agency or statewide system means the state official designated by law or by the commissioner as the individual responsible for the collection, use and dissemination of any set of data on individuals, government data, or summary data." Minn. Stat. § 13.02, subd. 16(a). Nothing in Plaintiff's Complaint pleads or suggests that Defendant Kelly as a county official is responsible for the statewide collection, use, and dissemination of the data set at issue in the present suit – namely, Minnesota's motor vehicle data. Accordingly, **the Court recommends dismissing with prejudice all MGDPA claims as alleged against Defendant Kelly**.

Plaintiff ultimately also fails to state an MGDPA claim against Wright County upon which relief may be granted. "To prevail on a claim for damages, plaintiffs must show 'that the District or its responsible authority disseminated [protected] data to an individual not authorized access to that data, and that the dissemination caused him damage as a result.'" M.P. ex rel. K., D.P. v. Indep. Sch. Dist. No. 721, New Prague, 200 F. Supp. 2d 1036, 1044 (D. Minn. 2002), aff'd in part and remanded sub nom., M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975 (8th Cir. 2003) (citations omitted).

It follows that the dissemination of information is an essential element of any claim arising under the MGDPA. In M.P. ex rel. K., D.P., the court held that because no material facts suggested *actual disclosure* of protected information, the plaintiff failed to demonstrate an essential element of an MGDPA claim. Id. at 1044. Similarly, in the present Complaint, Plaintiff merely alleges that "Defendants' conduct in obtaining, disclosing, and/or using Plaintiff's motor vehicle records was knowing and willful and violated the MGDPA . . . ." (Compl. [Docket No. 1], ¶ 38). Plaintiff pleads no facts that would establish that Wright County or the appropriate responsible authority disclosed protected information to individuals or entities not otherwise authorized access to such data. Plaintiff cites no case law that would suggest that DVS motor vehicle information which was not "disseminated" would yet still satisfy the elements of a traditional MGDPA claim, and the Court is aware of none. The fact is that Plaintiff has failed to plead any facts that would tend to suggest that either the appropriate responsible authority or Wright County disseminated Plaintiff's motor vehicle information to individuals not otherwise permitted to access the information.

Ultimately, Plaintiff has failed to specifically plead and identify for the Court any specific violation of the MGDPA and any facts in support thereof, opting for a "shotgun" pleading

approach that attempts to plead facts in support of a DPPA violation that may also conclusorily translate to an MGDPA violation. Accordingly, **the Court recommends dismissing without prejudice all of Plaintiff's potential MGDPA claims against Wright County for failure to state a claim upon which relief may be granted**.

## III.    CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

That Defendants' Motion to Dismiss, [Docket No. 13], be **GRANTED in part** and **DENIED in part**, as set forth above.

Date:   September 15, 2014                                  s/Leo I. Brisbois
                                                           Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **September 29, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for the objection. A party may response to the objections by **October 13, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.